**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| VILLAS AT WINDING RIDGE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:16-cv-03301-TWP-MJD |
| | ) | |
| STATE FARM FIRE & CASUALTY | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY ON THE PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT**

This matter is before the Court on cross-motions for summary judgment. On March 16,

2018 Defendant State Farm Fire And Casualty Company ("State Farm") filed a Motion for

Summary Judgment (Filing No. 83). Thereafter, Plaintiff Villas At Winding Ridge filed Cross-

Motion for Partial Summary Judgment and Response in Opposition to State Farm's Motion for

Summary Judgment (Filing No. 107.)  The dispute is this action surrounds Winding Ridge's

allegations of breach of contract and bad faith relating to State Farm's handling of its insurance

claim for storm damage to Villas at Winding Ridge, a golf course-adjacent condominium complex

on the northeast side of Indianapolis, Indiana owned by "Winding Ridge"[1]. State Farm contends

the relevant facts are undisputed and this Court should affirm an appraiser's award and grant it

summary judgment as a matter of law. (Filing No. 84.)  Winding Ridge moves for partial summary

judgment, asking the Court to find that the appraiser's award is not binding. (Filing No. 107.)

Also, before the Court is State Farm's Motion to Preclude or Limit Expert Testimony (Filing No.

128).  For the reasons that follow, Winding Ridge's cross-motion for partial summary judgment is

---

[1] Throughout this Entry the Court will refer to the Plaintiff as "Winding Ridge" and the condominium complex it owns as "Villas at Winding Ridge."

**granted in part and denied in part**. However, the action is dismissed because the Court **grants** summary judgment on behalf of State Farm and State Farm's Motion to Preclude or Limit Expert Testimony is **denied as moot**.

## I.     BACKGROUND

Villas at Winding Ridge is a golf course-adjacent 33-building condominium complex on the northeast side of Indianapolis, Indiana. (Filing No. 86-2.) State Farm issued a Residential Community Association Policy to Villas at Winding Ridge for the period July 1, 2012, to July 1, 2013 (the "Policy"). (Filing No. 86-1.) The Policy provides first-party property coverage for "accidental direct physical loss to Covered Property" (*Id.* at 43) but does not cover any property loss caused by "wear and tear." (*Id.* at 47.)   The Policy also contains the following provision regarding the time for bringing an action.

> **Legal Action Against Us.** No one may bring legal action against us under this insurance unless:
>
> (a) There has been full compliance with all of the terms of this insurance; and
>
> (b)The action is brought within 2 years after the date on which the accidental direct physical loss occurred. But if the law of the state in which this policy is issued allows more than two years to bring legal action against us, that longer time period will apply.

(Filing No. 86-1 at 99.)

The roofs of the buildings of Villas at Winding Ridge were installed between 1998 and 2000, except for the roofs on five buildings which were completed in March 2005. (Filing No. 86-3 at 9-10.)  On June 13, 2013, a hail and wind storm passed over the complex. (Filing No. 109-3.) In early 2014, Winding Ridge began seeking bids from various roofing contractors to replace the roofs of buildings at Villas at Winding Ridge. Rocklane Company ("Rocklane") presented to Winding Ridge, and based on their observations and how they intend to replace the roofs, provided

a "ballpark estimate of between $32-$40k per building." (Filing No. 86-4.) Rocklane reported the hail damage that could have affected "7-8 buildings." *Id.* On April 18, 2014, Winding Ridge submitted a hail damage claim to State Farm, based on information provided by Rocklane. (Filing No. 86-5 at 1.)

On May 6, 7, 20 and 21, 2014, State Farm's claims specialist Eric Meador ("Meador") inspected all 33 buildings at Villas at Winding Ridge. (Filing No. 86-5 at 2.) Meador's inspection revealed soft metal damage, hail damage to the soft metal condenser of some air conditioning units, some unrelated wind damage that took place following the cancellation of Winding Ridge's policy, mechanical damage from ice removal, damage to screens, prior mismatched shingle repairs and golf ball dents on the golf course side of the complex. *Id.* Meador determined that if hail fell on the complex, it would have been pea to marble-sized based on the hits seen on soft metals. *Id.* He prepared a replacement cost estimate totaling $65,713.54, which included repairs to soft metals, some combing of air conditioner condensers, replacement of some screens and repairs to gutter downspouts. *Id.* After subtracting $17,075.76 in depreciation and the $25,000.00 deductible, the actual cash value estimate totaled $23,637.78, and State Farm issued a check for that amount on May 29, 2014. (Filing No. 86-7.)

Shortly after tendering its claim to State Farm, Winding Ridge retained public adjuster Matt Latham ("Latham") of Crossroads Claims Consulting ("Crossroads") to represent it. (Filing No. 86-8.) Crossroads hired engineering firm Keeler-Webb Associates to inspect the property and give an estimate of the loss sustained in the June 13 hailstorm. (Filing No. 86-9.) On February 23, 2015, Winding Ridge through Latham at Crossroads sent a letter to State Farm declaring that it had sustained $1,975,264.25 "as a result of a hail storm that occurred on or around June 13, 2013" and offering to settle any dispute for that amount. (Filing No. 86-1.) Additionally, in recognition

that the two-year limitations period from the date of loss under the Policy was approaching, Latham requested that State Farm extend the period by 180 days. (Filing No. 34.) State Farm agreed to the extension. *Id.*

After receiving Winding Ridge's February 23, 2015 letter, State Farm inspected the property again and hired engineer Doug Brown ("Brown") of American Structurepoint to do the same. (Filing No. 86-5 at 3.) Brown determined there was no functional damage to the shingles on any units at Villas at Winding Ridge, and that any hail that fell was too small to damage the shingles. (Filing No. 86-13 at 7.) After State Farm presented Brown's report to Winding Ridge, Winding Ridge invoked the appraisal provision of the Policy. The appraisal provision provides the following:

**b. Appraisal**

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. Each party will notify the other of the selected appraiser's identity within 20 days after receipt of the written demand for an appraisal. The two appraisers will select an umpire. If the appraisers cannot agree upon an umpire within 15 days, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their difference to the umpire. A decision agreed to by any two will be binding. Each party will:
(1)    Pay its chosen appraiser; and
(2)    Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

(Filing No. 86-1 at 57.)

State Farm acknowledged and accepted Winding Ridge's written demand for Appraisal on September 28, 2015. (Filing No. 86-16.) State Farm selected Michael Scott ("Scott") from York Risk Services as its appraiser. (Filing No. 86-23.) Scott had worked for State Farm on only one prior claim before being selected as the appraiser for the Winding Ridge claim. (Filing No. 86-17

at 9-11.) Winding Ridge selected appraiser Garrett Kurtt ("Kurtt") of Ecoblast Claims Services. (Filing No. 86-18.) On or about December 12, 2015, Scott provided his initial estimate of covered damages totaling $79,921.80, which accounted for minor hail-related repairs to all 33 buildings, including replacement of some shingles, but did not provide for the full replacement of any roof. (Filing No. 86-21.) On December 22, 2015, Kurtt issued his estimate, totaling $676,824.07, which contemplated replacement of 13 roofs in the complex and repairs to other buildings. (Filing No. 86-22.)

The appraisers could not agree on the total loss. Pursuant to the Appraisal provision of the Policy, they agreed to select an umpire (Filing No. 86-19.) Each of the appraisers suggested three potential umpires and then narrowed the list of potential umpires to two persons: Al Kalemba ("Kalemba") with Illiana Claims Service (Scott's choice) and Mike Deszi with Complete Property Restoration (Kurtt's choice). (Filing No. 86-19; Filing No. 86-23.) After vetting and evaluating both candidates, Kurtt eventually agreed to Kalemba, who had never worked with State Farm prior to the Winding Ridge matter. (Filing No. 86-25.) Upon his selection, Kalemba certified under oath, the following:

> I, the undersigned hereby accept the appointment of umpire, as provided in the foregoing agreement, and solemnly swear that I will act with strict impartiality in all matters of difference that shall be submitted to in in connection with this appointment, and I will make a true, just and conscientious award recording to the best of my knowledge, skill and judgments. I am not related to any of the parties to this memorandum, not interested as a creditor or otherwise in said property of the insurance thereon.

*Id.* On April 13, 2016, Kalemba heard presentations from both appraisers. (Filing No. 86-26.) Then, with both appraisers present, he inspected the 13 roofs in dispute. *Id.*; Filing No. 109-10 at 7.

On April 30, 2016, Kalemba issued his decision providing for an adjusted claim worth $154,391.77. (Filing No. 86-28.) Kalemba's accompanying report noted "light collateral damage to the soft metals" and "minimal hits to some of the vent caps" but "very little to no hail damage to the roof shingles." (Filing No. 86-26.) The umpire's decision did not call for the full replacement of any roofs but did "allow for the replacement of shingles around the replaced turtle vents." *Id.* On May 2, 2016, Kurtt wrote a letter contesting Kalemba's decision for three main reasons: (1) during the on-site inspection Kalemba revealed that a State Farm manager uninvolved in the Winding Ridge case was a personal acquaintance, and he had not revealed this fact during the selection process, (2) during the on-site inspection Kalemba stated that he was inspecting shingles to determine whether they suffered functional or merely cosmetic damage, which went beyond the scope of his duties, and (3) he demonstrated a cozy relationship with Scott at the on-site inspection, including an instance in which Kurtt asked Kalemba a question and Scott jumped in to answer on Kalemba's behalf. (Filing No. 86-29.) On May 20, 2016 Kurtt emailed Kalemba and Scott that the umpire's ruling requiring State Farm to cover replacement of some shingles "around the replaced turtle vents" should be modified to a full replacement of those roofs because the company that provided the current shingles no longer made those shingles and it would be impossible to get shingles that matched the rest of the shingles on the roof. (Filing No. 86-30.)

On or about June 8, 2016, Kalemba affirmed his opinion and resubmitted the award of $154,391.77, which Scott signed on June 8, 2016. (Filing No. 86-31; Filing No. 86-32.) Based on Kalemba's award and after deducting depreciation, the deductible, and prior payments, State Farm owed its insured $80,678.80.  State Farm issued that payment to Winding Ridge on June 13, 2016. (Filing No. 86-33.)

Winding Ridge brought this suit on October 4, 2016, in the Hamilton County (Indiana) Superior Court, and State Farm removed it to federal court. (Filing No. 1.) Winding Ridge asserts claims for (1) breach of contract, (2) bad faith, and (3) promissory estoppel. (Filing No. 1-1.) State farm moved for summary judgment (Filing No. 83) and Winding Ridge moved for partial summary judgment (Filing No. 107).

## II.   <u>LEGAL STANDARD</u>

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions of file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489-90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted). "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted). Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox Cnty. Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

"In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of the claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citations and quotation marks omitted). "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted).

These same standards apply even when each side files a motion for summary judgment. The existence of cross-motions for summary judgment does not imply that there are no genuine issues of material fact. *R.J. Corman Derailment Serv., LLC v. Int'l Union of Operating Eng'rs.*, 335 F.3d 643, 647 (7th Cir. 2003). The process of taking the facts in the light most favorable to the non-moving party, first for one side and then for the other, may reveal that neither side has enough to prevail without a trial. *Id.* at 648. "With cross-motions, [the Court's] review of the record requires that [the Court] construe all inferences in favor of the party against whom the motion under consideration is made." *O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 983 (7th Cir. 2001) (citation and quotation marks omitted).

### III.   DISCUSSION

Under Indiana law, the interpretation of an insurance policy presents a question of law for the court to decide. *See Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 40 F.3d 146, 151 (7th Cir. 1994) (citing *Tate v. Secura Ins.*, 587 N.E.2d 665, 668 (Ind. 1992)); *Jim Barna Log Sys. Midwest, Inc. v. Gen. Cas. Ins. Co.*, 791 N.E.2d 816, 823 (Ind. Ct. App. 2003) ("The construction of an insurance contract is a question of law for which summary judgment is particularly appropriate."). A finder of fact is only required to determine the facts serving as the basis of an

insurance policy when the policy at issue "is ambiguous and its interpretation requires extrinsic evidence." *Tate*, 587 N.E.2d at 668.

"Clear and unambiguous policy language is given its ordinary meaning" to determine the parties' intent at the time the policy was made. *Holiday Hosp. Franchising, Inc. v. AMCO Ins. Co.*, 983 N.E.2d 574, 577-78 (Ind. 2013) (citation omitted). When the language of a policy is ambiguous, the court will generally resolve such ambiguities in favor of the insured "but will not do so if such an interpretation fails to harmonize the provisions of the contract as a whole." *Id.* at 578 (citations omitted). "[A]n ambiguity exists where the provision is susceptible to more than one reasonable interpretation"; a failure to define a policy term or a disagreement about a term's meaning "does not necessarily make that term ambiguous." *Id.* (citations and quotation marks omitted).

State Farm seeks summary judgment on each of Winding Ridge's three claims: (1) breach of contract, (2) bad faith, and (3) promissory estoppel. Winding Ridge seeks partial summary judgment on the following language of the Policy: (1) the Policy provides coverage for cosmetic damage to shingles, (2) State Farm breached the Policy by only adjusting functional shingle damage, (3) the Policy provides coverage for matching shingles, (4) State Farm's two-year defense to sue is unenforceable as a matter of law, (5) the Umpire Award is not binding against Winding Ridge as a matter of law, and (6) State Farm breached its obligations by not adjusting the wind damage. The Court will first address State Farm's primary argument that all three claims are time-barred by the terms of the Policy, before considering each claim separately.

A.    **The State Farm Policy's Two-Year Limitations Period**

State Farm contends Winding Ridge lawsuit should be dismissed because Winding Ridge failed to bring suit within the two-year limitations period provided for in the Policy. As note earlier, The Policy states:

> **Legal Action Against Us.** No one may bring legal action against us under this insurance unless:
>
> (1) There has been full compliance with all of the terms of this insurance; and
>
> (2) The action is brought within 2 years after the date on which the accidental direct physical loss occurred. But if the law of the state in which this policy is issued allows more than two years to bring legal action against us, that longer time period will apply.

(Filing No. 86-1 at 99.)  State Farm argues this provision is valid and enforceable because it does not contravene any statute or public policy. (Filing No. 84 at 13.)  The date of loss in this action was June 13, 2013, when the hailstorm struck Villas at Winding Ridge—meaning Winding Ridge was required to file its suit by June 13, 2015.  *Id.*  However, when Winding Ridge recognized the two-year limitations period was nearing its end, its public adjuster requested State Farm extend the period by an additional 180 days, which State Farm agreed to do. (Filing No. 86-34.) State Farm admits this extension changed Winding Ridge's filing deadline to December 10, 2015. But instead of filing suit on or before that date, Winding Ridge invoked the Appraisal provision of the contract, which started a lengthy appraisal process. The umpire issued his decision in April 2016. Although Winding Ridge began contesting that decision in May 2016, it waited until October 4, 2016, to file its lawsuit. (Filing No. 1-1.) State Farm argues that it expressly allowed one 180-day extension but did not agree or imply that it intended to waive the limitation period altogether, thus State Farm did not waive the limitation period in the Policy. Because Winding Ridge did not file

this suit until after the extended limitation period had passed, State Farm argues this lawsuit was untimely filed, and should be dismissed.

Winding Ridge makes three arguments in opposition.  First, it argues that Indiana statute and public policy creates a ten-year statute of limitations for breach of contract actions, including insurance policies, and that period must be enforced as recognized by the language of the Policy. (Filing No. 108 at 13.) Second, Winding Ridge argues State Farm waived the two-year period by agreeing to the 180-day extension. *Id.* at 14. And third, Winding Ridge argues State Farm impliedly waived the two-year period, or at least there are factual questions which could reveal that State Farm impliedly waived the two-year period, by agreeing to toll the period during the appraisal process. *Id.* at 14-17.

The Court need not address Winding Ridge's waiver arguments because the clause on its own terms allows an action against State Farm for up to ten years after the date of loss. Under Indiana law, "[a]n action upon contracts in writing other than those for the payment of money…must be commenced within ten (10) years after the cause of action accrues." Ind. Code § 34-11-2-11. Indiana law *allows* an action under this contract for up to ten years after the date of loss. The Policy, by its plain terms, applies the longer time period of two years or the amount of time allowed by the relevant state law—here, ten years.

State Farm argues reading the provision this way renders the first sentence meaningless. (Filing No. 119 at 10.) The Court disagrees. The first sentence of the provision requires a litigant to bring his claim within two years of the date of loss. The second sentence can only be read as an exception to the first sentence, giving a litigant more time when the law or policy of his state allows for it.  State Farm argues "the Policy should be read to allow for the two year limit unless Indiana law *requires* a longer minimum time to file a lawsuit." *Id.* (emphasis added) (citing *State Farm*

*Fire and Cas. Co. v. Riddell Nat. Bank*, 984 N.E.2d 655, 659 Ind. Ct. App. 2013)). Had the provision stated: "But if the law of the state in which this policy is issued *requires a litigant be given* more than two years to bring legal action against us, that longer time period will apply," the Court would read it the way State Farm suggests. Instead, the Policy states: "But if the law of the state in which this policy is issued *allows* more than two years to bring legal action against us, that longer time period will apply." (Filing No. 86-1 at 99.)

Indiana law allows more than two years for these types of actions—it allows up to ten years, as confirmed by the case State Farm primarily relies upon. *Riddell* at 659 ("pursuant to the policy's conformity to state law provision, the ten year statute of limitations provided by Indiana Code section 34-11-2-11 applies…."). The provision is unambiguous—it allows a policy holder to bring a claim within the longer period of two years or the state's statutory period, which in this case is ten years. It is undisputed that Winding Ridge brought its claim within ten years of the date of loss, and thus Winding Ridge's lawsuit is timely.

**B.** **State Farm's Summary Judgment on Breach of Contract**

State Farm argues the Court should dismiss Winding Ridge's breach of contract claim because "the undisputed facts demonstrate that State Farm complied with all terms and conditions of the Policy in responding to, adjusting, and paying Winding Ridge's Claim." (Filing No. 84 at 14.) In Indiana, "[t]he essential elements of a breach of contract claim are 'the existence of a contract, the defendant's breach thereof, and damages.'" *Auto-Owners Ins. Co. v. C & J Real Estate, Inc.*, 996 N.E.2d 803, 805 (Ind. Ct. App. 2013) (citing *Fowler v. Campbell*, 612 N.E.2d 596, 600 (Ind. Ct. App. 1993)). The thrust of State Farm's argument is that Winding Ridge is unhappy that State Farm did not cover the full loss the condominiums sustained in the storm, but Winding Ridge does not identify a specific provision or section of the Policy that was breached.

*Id.* at 15-16. State Farm argues it abided by the terms of the contract, particularly the appraisal provision that Winding Ridge invoked. According to State Farm, "Winding Ridge's breach of contract claim fails as a matter of law, because State Farm did 'fully cover' Winding Ridge for its losses covered under the State Farm Policy." *Id.* at 16.

Winding Ridge's response brief identifies five ways in which its claims process was not handled in a manner that was consistent with the terms of the Policy. First, it asserts that the Policy's coverage of "accidental direct physical loss to Covered Property" includes "cosmetic" or "nonfunctional" damage to shingles, but its award did not reflect the cosmetic damage that Winding Ridge's shingles suffered in the storm. (Filing No. 108 at 6-9.) It argues State Farm's failure to adjust the umpire's award for cosmetic shingle damage constituted breach of contract. Second, the Policy requires State Farm to pay for shingles that match the other shingles in the complex, and if no such shingles can be obtained, to replace entire roofs with new shingles that do match. *Id.* at 10-12. Third, State Farm breached its "duties" by not adjusting the award for wind damage, which Winding Ridge says, "would have been covered under the Policy." *Id.* at 31. Fourth, State Farm's appraiser was not impartial as required by the Policy, or at least that questions of fact exist that go to his partiality. *Id.* at 25-26. And last, questions of fact exist that go to the umpire's impartiality and competence and the umpire's award only applied to 13 of the 33 buildings in the complex. *Id.* at 28.

Winding Ridge also raises two issues with the Policy itself. First, it argues the Policy's appraisal provision lacks mutuality and is therefore unenforceable. *Id.* at 18-20. Second, it argues the appraisal provision, specifically the words "amount of loss," is ambiguous and should be

construed against State Farm as the insurer. *Id.* at 20-25. The Court will address the policy arguments first, before turning to Winding Ridge's arguments that State Farm breached it.[2]

### 1. **The State Farm Policy**

#### a. **Mutuality of the Appraisal Provision**

The last sentence of the Policy's appraisal provision reads, "If there is an appraisal, we will still retain our right to deny the claim." (Filing No. 86-1 at 57.) Winding Ridge argues this sentence robs the clause of its mutuality, binding only the insured by the appraisal process but allowing the insurer to reject an appraisal it is not happy with. (Filing No. 108 at 18.) Winding Ridge likens the appraisal provision to a "hopelessly vague and uncertain" agreement to arbitrate that the Seventh Circuit found to be unenforceable in *Penn v. Ryan's Family Steak Houses, Inc.*, 269 F.3d 753, 760 (7th Cir. 2001). Although the contract in *Penn* included the rules for arbitration, it gave the arbitrator "the sole, unilateral discretion to modify or amend them," and thus did not bind the arbitrator at all. *Id.* at 759-760.  Winding Ridge argues the Policy here is similar, in that State Farm has the sole discretion to refuse to abide by an appraisal award, and the appraisal process is therefore unenforceable due to lack of mutuality.

Winding Ridge's argument misses the nuance of the appraisal provision, which binds both parties to the "amount of loss" but does not require the insurer to pay out a claim for that amount if it has some other grounds, such as causation, to deny the claim. This Court has recognized the validity of similar appraisal provisions finding the policy in question makes clear that "the results of an appraisal do not necessarily constitute the last word; appraisers' competence is limited to assessing the amount of loss, and not to interpreting other provisions of the policy." *Philadelphia*

---

[2] Winding Ridge also argues that State Farm is precluded from asserting binding appraisal as a defense because it did not list appraisal as an affirmative defense in its answer, but the Court has rejected that argument in an accompanying order.

*Indem. Ins. Co. v. WE Pebble Point*, 44 F.Supp.3d 813, 821 (S.D. Ind. September 3, 2014). Clauses worded this way allow parties to undertake appraisal even where issues of causation remain that may ultimately result in denial of a claim for any amount. *Shifrin v. Liberty Mut. Ins.*, 991 F.Supp.2d 1022, 1038 (S.D. Ind. January 9, 2014).  Similar to the appraisal provisions discussed in *Pebble Point* and *Shifrin*, the appraisal provision here binds the parties to an "amount of loss" but does not prohibit them from contesting a claim based on other provisions of the policy. The appraisal provision thus does not lack mutuality, and it is enforceable against both parties as to the amount of loss Winding Ridge suffered.

**b.      Ambiguity of the Appraisal Provision**

The Policy's appraisal provision states: "The appraisers will state separately the value of the property and *amount of loss*.  If they fail to agree, they will submit their differences to the umpire.  A decision agreed to by any two will be binding." (Filing No. 86-1 at 57.) (Emphasis added.) Winding Ridge argues that the term "amount of loss" in the appraisal provision is ambiguous, and thus the appraisal provision is unenforceable. (Filing No. 108 at 20.) It first claims that the appraisal provision is "an exclusionary clause," and thus State Farm "bears the burden of proving its applicability." *Id.* (quoting *Keckler v. Meridian Sec. Ins. Co.*, 967 N.E.2d 18, 23 (Ind. Ct. App. 2012), *trans. denied*. Winding Ridge asserts that State Farm has adjusted guidelines and taken contradictory positions as to the meaning of the term "amount of loss," and those contradictions show the phrase is ambiguous. *Id.* at 21. Winding Ridge cites several cases from other jurisdictions in which State Farm challenged appraisal awards under its policy because they improperly considered causation, coverage, or liability instead of the amount of loss. *Id.* at 22-24. State Farm responds by quoting *Pebble Point's* review of Indiana caselaw on the issue: "Indiana courts have repeatedly affirmed the enforceability of appraisal clauses, which are a common

15

feature of first-party insurance contracts." 44 F.Supp.3d at 817. It then cites several cases applying Indiana law that affirmed parties who submit to an "amount of loss" appraisal are bound by that appraisal. (Filing No. 119 at 6.) *Weidman v. Erie Insurance Group,* 745 N.E.2d 292, 298 (Ind. Ct. App. 2001) (appraisal award "determine[s] the amount of [the insured's] loss only, and other provisions in the policy govern the extent of [the insurer's] liability for that loss"). Indiana courts have repeatedly affirmed that a party who voluntarily submits to appraisal to determine the "amount of loss" is bound by the appraisal award, absent exceptional circumstances, which do not exist here. *See Atlas Constr.*, 309 N.E.2d at 814; *see, e.g.*, *FDL, Inc. v. Cincinnati Ins. Co.*, 135 F.3d 503, 505 (7th Cir. 1998) ("[The insured] fails to allege any basis for setting aside the appraisal under this standard. Therefore, the appraisal award is binding, and the district court erred in addressing [the insured's] additional arguments.").

In Indiana, the goal of contract interpretation is to determine the intent of the parties at the time they made the agreement. *Care Group Heart Hospital, LLC v. Sawyer*, 93 N.E.3d 745, 752 (Ind. 2018) (quotations omitted). The Court begins with the contract language to determine whether it is ambiguous. *Id.* (citation omitted). If the language is unambiguous, the Court will "give it its plain and ordinary meaning in view of the whole contract, without substitution or addition." *Id.* (quotation omitted).

The Court determines that the phrase "amount of loss" in the Policy's appraisal provision is unambiguous. The Indiana Supreme Court "has not spoken on the issue" of whether appraisers may consider causation. *Travelers Prop. Cas. Of Am. V. Marion T, LLC*, 2010 WL 1936165 at *8 (S.D. Ind. 2010). However, this Court has recognized that, to a certain extent, appraisers must consider causation when appraising damaged property. *Pebble Point*, 44 F.Supp.3d at 818; *Shifrin*, 991 F.Supp.3d at 1037. In order for the appraisal to be meaningful at all it must quell questions

16

about the origin of the damage—otherwise parties would litigate those questions and the appraisal process would serve very little purpose.

The circumstances here required the appraisers to consider causation, because Villas at Winding Ridge is a condominium complex adjacent to a golf course that made an insurance claim because of hail damage to roofs. Some roofs may have sustained damage both from the impact of hailstones and some from the impact of golf balls. An appraiser's goal should only be to quantify the "amount of loss" caused by hailstones, as Winding Ridge brought no claim alleging damage from golf balls, presumably because golf ball damage is not covered in its policy. Such issues of causation and coverage are inextricably included in an appraiser's job. If an appraiser offered a blanket "amount of loss" including damage caused by golf balls, wear and tear, and other causes not covered by the Policy, the "amount of loss" estimate would be meaningless.

The Court does not intend to infer that an appraiser's estimate is unassailable. There are instances when one of the parties contests an umpire's award for proper reasons, such as an allegation that the umpire has improperly considered the scope of coverage. Winding Ridge makes such an argument here, alleging the umpire improperly concluded that cosmetic damage to shingles was not included in Winding Ridge's policy, and thus he did not include it in his "amount of loss" calculation. Winding Ridge argues that State Farm has made a similar argument in at least one other case. (Filing No. 108 at 23.) Those arguments are appropriate—they recognize that appraisers are experts at determining how much damage a property has sustained but insurance adjusters, attorneys, and courts are better-suited to resolve the contract language, which determines how much of that loss is covered by the policy. But those arguments do not bear on the "amount of loss" language in the contract, which is unambiguous. Winding Ridge's argument does not persuade the Court that the appraisal provision is unenforceable.

17

2.    **The Alleged Breach**

The Court identifies—from different parts of the summary judgment briefing—five allegations that State Farm breached the Policy:

(i.) State Farm Policy's coverage of "accidental direct physical loss to Covered Property" includes "cosmetic" or "nonfunctional" damage to shingles, but its award did not reflect the cosmetic damage that Winding Ridge's shingles suffered in the storm (Filing No. 108 at 6-9);

(ii.) the Policy requires State Farm to pay for shingles that match the other shingles in the complex, and if no such shingles can be obtained, to replace entire roofs with new shingles that do match (*Id.* at 10-12);

(iii.) State Farm breached its "duties" by not adjusting the award for wind damage, which Winding Ridge says, "would have been covered under the Policy" (*Id.* at 30-31);

(iv.) State Farm's appraiser was not impartial as required by the Policy, or at least that questions of fact exist that go to his partiality (*Id.* at 25-26); and

(v.) questions of fact regarding the umpire's impartiality and competence and the umpire's award only applied to 13 of the 33 buildings in the complex (*Id.* at 28).

The Court addresses these arguments in order.

**(i.)  Cosmetic Shingle Damage**

The Policy covers "accidental direct physical loss to Covered Property" unless the loss is excluded by some other provision of the policy. (Filing No. 86-1 at 44.) Winding Ridge argues the Policy contains no exclusion for cosmetic shingle damage, and thus State Farm agreed to cover its cosmetic shingle damage.[3] (Filing No. 108 at 6.) Winding Ridge's appraiser found that some shingles at the complex likely suffered cosmetic damage during the hail storm. *Id.* at 7 (citing

---

[3] The parties use the terms "cosmetic" and "functional" by their commonly understood definitions. Cosmetic damage makes the shingles look worse but does not affect their functionality. Functional damage is damage that reduces the roof's functional capacity—decreasing the useful life of the shingle or limiting its ability to keep water from leaking into the structure below.

Filing No. 109-12 at 17-18 ("granule loss likely occurred on the shingles on the date of loss…however, this overall granule loss has not reduced the life expectancy or water shedding ability of the shingles.")) Additionally, State Farm paid for cosmetic damage to soft metals, and thus, Winding Ridge contends this is tantamount to an admission that cosmetic damage to shingles is covered by the policy as well. *Id.* at 8.

The Court need not determine whether the Policy covers cosmetic shingle damage because the designated evidence shows that the umpire did not distinguish between functional damage and cosmetic damage when appraising the Villas at Winding Ridge. The umpire discussed the granule damage Winding Ridge complains of in his report:

> The granule loss to the majority of the south and west facing slopes is uniform indicating potential manufacture defect, age, wear and deterioration due to the usual high heat and wind exposure that these elevations are subject to during the life of the material. The granule loss does not indicate hail damage.

(Filing No. 86-26 at 2.) When asked whether he made a distinction between "functional versus cosmetic damage at all," the umpire responded that "[t]here was either enough there to damage—enough in a square or there wasn't." (Filing No. 86-24 at 27.) He also attributed some of the damage the shingles sustained to causes other than the June 13, 2013 hail storm, including a potential manufacturer's defect. *Id.* The umpire's report and testimony indicate that he accounted for *all* damage, both cosmetic and functional, that he attributed to the June 13, 2013 hail storm. Winding Ridge's claim that the umpire ignored cosmetic damage is not supported by the designated evidence.

**(ii.)  Shingle Matching**

Winding Ridge asks the Court to deny State Farm's Motion for Summary Judgment because it breached its contract by failing to adjust the award to provide for matching shingles. Winding Ridge's argument proceeds in several parts. First, the Policy provides for matching

19

replacement shingles. ([Filing No. 108 at 10](#).) Second, matching shingles were not available for these roofs because the manufacturer of the original shingles no longer manufactured that shingle when Winding Ridge made its claim. Third, because replacing only a few shingles on the roof was an impossibility, State Farm was obligated to replace entirely any roof that had even one damaged shingle. *Id.* (citing the National Association of Insurance Commissioners Unfair Property/Casualty Claim Settlement Practices Model Regulation section 9A).  By failing to do that, State Farm breached the Policy.

State Farm makes two counter-arguments. First, State Farm argues Winding Ridge was informed by the shingle manufacturer that matching shingles were unavailable five months before appraisal occurred but failed to pass that information along to State Farm's appraiser or the umpire so that they could factor it into their "amount of loss" estimates. ([Filing No. 119 at 16](#).) Second, State Farm notes that the Policy does not require replacement of undamaged property, and Winding Ridge does not cite any Indiana law requiring State Farm to replace undamaged property. *Id.* at 17.

The parties dispute the importance of *Erie Ins. Exchange v. Sams*, 20 N.E.3d 182 (Ind. Ct. App. 2014), a case in which a storm damaged one side of a roof and home but siding and shingles matching the original home were unavailable. The Sams wanted their insurance company to replace their entire roof, but the insurance company refused. Unfortunately, *Erie Ins.* does not provide much guidance here, because of legal and factual differences. In *Erie Ins.*, the parties disputed a contract provision stating that "[p]ayment will not exceed … the replacement costs of that part of the dwelling damaged for equivalent construction and use on the same premises[.]" 20 N.E.3d at 191. The *Erie Ins.* court determined that "the part of the dwelling damaged" in the storm was the roof, not merely the face of the roof that sustained the most damage. Because the *Erie Ins.*

court was interpreting a contract provision that is not present in the Policy and the facts in *Erie Ins.* showed that the entire roof was damaged, its result is not determinative of State Farm's Motion for Summary Judgment.

Instead, like the *Erie Ins.* court, this Court looks to the actual language of the policy at issue. The Policy states

> We will pay the cost to repair or replace, after application of the deductible and without deduction for depreciation, but not more than the least of the following amounts: The cost to replace, on the described premises, the lost or damaged property with other property of comparable material, quality and used for the same purpose.

(Filing No. 86-1 at 58.) The policy does not promise to match replacement shingles with existing shingles, it only promises to provide property of comparable material and quality that is used for the same purpose as the property it is replacing. Therefore, even taking the facts as most favorable to Winding Ridge, the Court finds as a matter of law that State Farm did not breach the policy by failing to provide matching shingles or failing to replace entire roofs because matching shingles were unavailable. It is undisputed that State Farm's award did not provide for matching shingles, but because the policy did not require them to match shingles exactly, that fact cannot form the basis of a breach of contract claim.

**(iii.)   Wind Damage**

Winding Ridge alleges that "State Farm clearly breached its duties to Winding Ridge by not fully investigating and considering the wind damage." (Filing No. 108 at 31.) But Winding Ridge does not bring a claim for negligence, the elements of which would require it to identify a duty State Farm owed it and prove a breach of that duty. Winding Ridge's breach of contract claim requires it to identify a provision of the contract that would obligate State Farm to investigate wind damage; however, the undisputed designated evidence shows Winding Ridge only tendered a

claim of hail damage. ([Filing No. 86-5](#).) Because Winding Ridge identified no such provision in the Policy, its wind damage argument does not defeat State Farm's Motion for Summary Judgment.

### (iv.)   State Farm's Appraiser's Partiality

The appraisal provision requires each party to "select a competent and impartial appraiser." ([Filing No. 86-1 at 57](#).) If a party selected an appraiser who was not impartial, then the appraisal was not conducted as agreed to and would be vacated and inadmissible at trial. *Shree Hari Hotels, LLC v. Soc'y Ins.*, 2013 WL 4777212 at *3 (S.D. Ind. Sept. 5, 2013). Winding Ridge argues that State Farm's appraiser Scott was impartial as a matter of law because he was himself a State Farm insured, and questions of fact exist as to his partiality because he "simply parroted" State Farm's estimate and his only appraisal work comes from insurers. ([Filing No. 108 at 26](#).)

State Farm responds that Winding Ridge misstates the law when it says that Scott, a holder of one out of the 84 million policies State Farm has issued in the United States, has an ownership and pecuniary interest in State Farm. ([Filing No. 119 at 7-8](#).) Additionally, State Farm argues that the only evidence indicating Scott parroted State Farm's estimate is the deposition testimony of Winding Ridge's appraiser. *Id.* at 8.

The Court agrees that "it is axiomatic that '[a]n appraiser with a financial interest in the outcome of the appraisal is not impartial.'" *Shree Hari Hotels* at *2 (quoting *Gold v. State Farm Fire & Cas. Co.*, 2010 WL 3894141 (D. Colo. 2010) (brackets original)). Winding Ridge argues that Scott had a pecuniary interest in State Farm and therefore the outcome of Winding Ridge claim, because State Farm is a mutual company owned by its insureds. ([Filing No. 108 at 25](#).) But State Farm is a national company that has issued more than 84 million policies nationwide. To say the owner of a single homeowner's policy with State Farm has a pecuniary interest in the outcome

of this appraisal, which represents only a tiny fraction of State Farm's total business, strains the meaning of "pecuniary interest". The Court recognizes that a person could be disqualified as an impartial appraiser because of his financial ties to the party employing him, only Scott's ties are too insignificant to disqualify him.[4] Accordingly, the Court rejects Winding Ridge's argument that Scott was impartial by law because he was a State Farm insured in 2017.

Winding Ridge also argues that "questions of fact further exist as to Scott's impartiality." *Id.* at 26. However, Winding Ridge does not identify any facts about Scott that State Farm disputes. It merely alleges that Scott "simply parroted State Farm's estimate," "only handled appraisals for insurers," and that his "work as the appraiser in 2015 and 2016 came during a time that [his employer] was trying to increase and strengthen its relationship with State Farm." *Id.* Winding Ridge's allegation that Scott simply parroted State Farm's evidence is not a fact, but a conclusion, and one that is undermined by the fact that Scott's appraisal awarded Winding Ridge $14,000.00 more than State Farm's estimate. (Filing No. 86-21; Filing No. 86-26.) State Farm does not dispute Scott's employment history as an appraiser for insurance companies, it only argues that history does not disqualify him from serving as State Farm's appraiser in this case. Winding Ridge's argument that State Farm breached its agreement by hiring a biased appraiser is without merit and does not defeat State Farm's Motion for Summary Judgment.

**(v.)   The Umpire's Partiality and Competence**

Last, Winding Ridge challenges the umpire's partiality and competence, arguing his "long-standing relationship with a State Farm claims manager whom he went to college with and reconnected with through a weekly golf club" biased the umpire in State Farm's favor. (Filing No. 108 at 26.) Winding Ridge explains that Kalemba, the umpire, did not disclose this relationship

---

[4] Additionally, State Farm points out that the designated evidence only shows that Scott held a policy with State Farm in 2017, when he gave his deposition in this case, not in 2015 when he conducted his appraisal.

when Winding Ridge's appraiser was vetting him.  *Id.* at 27 (citing Filing No. 109-9 at 15.) Again, the parties do not dispute any material facts. State Farm does not contend Kalemba was not acquainted with one of its claim managers, only that Winding Ridge never asked him to disclose it during the vetting process, and thus the appraisal is untainted.  The Court agrees with State Farm. It was Winding Ridge's appraiser's obligation to vet the candidates for umpire thoroughly before agreeing to one. Absent a fraud or deception by the umpire or State Farm, Winding Ridge cannot agree to an umpire and then question his impartiality when it receives an award it does not like. No evidence indicates any fraud or deception occurred in this case.[5]  No dispute of fact exists as to the umpire's impartiality; thus, Winding Ridge has shown no breach of contract.

In conclusion, State Farm moved for summary judgment on Winding Ridge's breach of contract claim, arguing State Farm abided by all provisions of the Policy. Winding Ridge identified five arguments that State Farm breached the agreement. All five failed to defeat the motion because they did not raise disputed issues of fact or show that State Farm was not entitled by law to judgment in its favor. Therefore, State Farm's Motion for Summary Judgment is **GRANTED** as to Winding Ridge's breach of contract claim. That claim is **DISMISSED**.

**C.** **State Farm's Summary Judgment Bad Faith**

Winding Ridge's Complaint alleges:

> State Farm breached its obligations of good faith and fair dealing by misrepresenting the terms and conditions of its insurance policy concerning the appraisal process, agreeing to an umpire award that determined the scope of the damage, for partially denying the claims of damage to all buildings in bad faith, and for seeking to enforce an illegal insurance policy.

---

[5] Winding Ridge's argument that the award must be set aside because the umpire only evaluated 13 out of 33 roofs is also unavailing, as the designated evidence shows the only dispute that an umpire was needed to resolve was whether those 13 roofs needed to be replaced entirely. (Filing No. 86-30 at 1.)

(Filing No. 1-1 at 5.) In Indiana, an insurer has a duty to deal with its insured in good faith. *Erie Ins. Co. v. Hickman by Smith*, 622 N.E.2d 515, 518-19 (Ind. 1993). Interpreting this duty, the Indiana Court of Appeals has said:

> The obligation of good faith and fair dealing with respect to the discharge of the insurer's contractual obligation includes the obligation to refrain from making an unfounded refusal to pay policy proceeds, causing an unfounded delay in making payment, deceiving the insured, or exercising any unfair advantage to pressure the insured into settlement of his claim. The insurer does not necessarily breach its duty of good faith every time it erroneously denies an insurance claim; a good faith dispute about the amount of a claim will not supply the basis for recovery under the theory that the insurer tortuously breached its duty to exercise good faith with respect to its insured.

*Johnston v. State Farm Mut. Auto Ins. Co.*, 667 N.E.2d 802, 804 (Ind. Ct. App. 1996), *trans denied*. To succeed on its motion for summary judgment, the insurer must show that it "had a rational and principled basis for denying coverage." *Thompson Hardwoods, Inc. v. Transp. Ins. Co.*, 2002 WL 440222 at \*7 (S.D. Ind. March 15, 2002).

State Farm argues that no evidence or testimony propounds Winding Ridge's claims of bad faith. State Farm argues it "had a reasonable basis for its decision, supported by multiple independent inspections and engineers." (Filing No. 84 at 20.) The evidence indeed shows that the award State Farm ultimately paid to Winding Ridge was supported by State Farm's claims adjuster, an independent engineer, its appraiser, and the then the mutually agreed upon umpire.

Winding Ridge, in response, provides a detailed theory on how State Farm's claims specialist Meador set out to lowball Winding Ridge on this claim as revenge against Winding Ridge's consultant Rocklane for an "enormous loss" State Farm took on another claim that Rocklane and public adjuster Latham were involved with. (Filing No. 108 at 32-35.) The crux of the narrative is a long paragraph mostly reiterating claims made in Winding Ridge's breach of contract claim:

With this enormous loss fresh in Meador's mind, Meador was determined to beat Latham on this claim. Beating Latham meant that there would be no roof replacements, which was the biggest part of the claim. The facts show that Meador intentionally tried to conceal wind damage and hail damage from the insured. He again utilized Doug Brown to parrot his findings and instructed Doug to ignore and purposefully not to document wind damage. Meador deceitfully presented Doug Brown's report to Winding Ridge as a "independent engineer" to support Meador's adjustment that there was not one damaged shingle. Further, Meador only evaluated the claim for functional shingle damage, even though the Policy also covers cosmetic shingle damage. This is a clear misrepresentation of policy coverages. Also, the umpire found shingle damage to each of the buildings he examined. Last, State Farm, for no reason at all, refused to apply matching coverage after the Umpire Award, even though State Farm learned that existing shingles were discontinued and could not be matched. While State Farm did issue payments for the soft-metals and paid the Umpire Award, Winding Ridge incurred approximately $1,546,155 to replace the roofs (most of which has been paid to Rocklane), and Meador's estimate was for only $65,713, (Exhibit 29, Interrogatory 5 and Defendant's Exhibit 4). A factual dispute exists as to whether State Farm/Meador engaged in a practice to deny policy benefits in bad faith.

*Id.* at 33.

This narrative is devoid of citations to designated evidence other than to support figures for the amount of Meador's original estimate and the cost of replacing the roofs, which are undisputed.  In the last sentence, Winding Ridge asserts that a factual dispute exists over whether State Farm acted in bad faith. But bad faith is a legal issue that the Court must resolve, not a factual issue on which Winding Ridge's claim rests. Most importantly, Winding Ridge's narrative is untethered to the elements of insurance bad faith under Indiana law. It alleges State Farm deceived it by passing off Doug Brown as an "independent engineer," but does not cite to any evidence indicating why it is deceptive to describe Brown, an engineer employed by American Structurepoint, as independent.

Faced with the evidence in the record, a reasonable jury would have to find that State Farm had a rational, principled basis for denying coverage—namely the reports of its claims adjuster,

independent engineer, outside appraiser, and umpire. Therefore, the Court **grants** State Farm's Motion for Summary Judgment as to Winding Ridge's bad faith claim. That claim is **dismissed**.

**D.**     **State Farm's Summary Judgment on Promissory Estoppel**

State Farm moves for summary judgment on Winding Ridge's claim for promissory estoppel, arguing it is merely a reiteration of its breach of contract claim. To succeed on a claim for promissory estoppel, a plaintiff must establish that: "(1) a promise by the promissor; (2) made with the expectation that the promisee will rely thereon; (3) which induces reasonable reliance by the promisee; (4) of a definite and substantial nature; and (5) injustice can be avoided only by enforcement of the promise." *State Farm Mut. Auto. Ins. Co. v. Sellers*, 854 F.Supp.2d 609, 628 (N.D. Ind. 2012) (citations omitted). Winding Ridge's response brief does not address State Farm's argument on its promissory estoppel claim. Because Winding Ridge does not identify any promise made by State Farm other than the contract, its promissory estoppel claim is duplicative of its breach of contract claim. Thus, State Farm's Motion for Summary Judgment is **granted** as to Winding Ridge's promissory estoppel claim, and that claim is **dismissed.**

**E.**     **Winding Ridge's Cross-Motion for Partial Summary Judgment**

In its Cross-Motion for Partial Summary Judgment, Winding Ridge asks the Court to make rulings on six provisions of the Policy, as a matter of law: (1) the Policy provides for cosmetic damage to shingles, (2) State Farm breached the Policy by only accounting for functional shingle damage, (3) the Policy provides coverage for matching shingles, (4) State Farm's two-year defense to sue is unenforceable as a matter of law, (5) the appraisal award is not binding against Winding Ridge as a matter of law, and (6) State Farm breached its obligations by not adjusting the wind damage. (Filing No. 107; Filing No. 108 at 6.)

27

1.    **Cosmetic Shingle Damage**

Winding Ridge asks the Court to determine as a matter of law that the Policy covers cosmetic shingle damage. (Filing No. 108 at 6.) The Policy covers "accidental direct physical loss to Covered Property," which Winding Ridge argues includes cosmetic damage in addition to functional damage. (Filing No. 86-1 at 44.) Winding Ridge points out that State Farm admitted that the Policy covers cosmetic damage to soft metals like downspouts and roof vents, and there is no reason to treat soft metals differently from shingles under the Policy. (Filing No. 108 at 8.)

State Farm replies that cosmetic damage is not covered by the Policy because no "loss" occurs when a property suffers cosmetic damage. (Filing No. 119 at 14-15.) It distinguishes this case from *Advance Cable Company, LLC v. Cincinnati Ins. Co.*, 788 F.3d 743, 745 (7th Cir. 2015) (applying Wisconsin law), in which the Seventh Circuit determined cosmetic damage was covered by an insuring agreement that provided coverage for "accidental loss or damage." The court in *Advance Cable* emphasized that its policy covered not only loss in value or property, which may not stem from cosmetic injury to property, but also damage to property, which can occur without a measurable loss. *Id.* at 747. Because the policy here only covers loss, and not damage, State Farm argues, "[t]o require coverage for 'cosmetic damage' to composition shingles as Winding Ridge demands would read an obligation into the policy that does not otherwise exist." (Filing No. 119 at 15.)

The Court agrees with Winding Ridge that the phrase "accidental direct loss to physical property" includes cosmetic damage. The Policy does not say whether it defines "loss" as diminished value or diminished functionality. Cosmetic damage does not diminish a condominium unit's functionality, but it often does diminish a condominium unit's value since the value of real estate is linked to its appearance. The Policy is rife with exclusions for loss it will not cover, but it

does not mention cosmetic loss at all. The Court declines to derive an exception for cosmetic loss from a policy that does not explicitly provide one. The Policy covers direct loss to physical property, which includes the diminished value of a condominium that can stem from cosmetic damage suffered in a hail storm. Winding Ridge's motion is **granted** as to the Policy's coverage of cosmetic shingle damage.

### 2.   State Farm's Coverage of Functional Shingle Damage

Winding Ridge next asks the Court to determine as a matter of law that State Farm breached the Policy by failing to adjust its award to cover cosmetic shingle damage. Winding Ridge argues that State Farm's engineer Doug Brown documented cosmetic shingle damage, but that damage was not included in State Farm's adjustment or the umpire award. (Filing No. 108 at 9.)

State Farm's assertion is not supported because the designated evidence indicates the umpire considered all damage—including cosmetic damage—to shingles when calculating his award. The umpire merely saw things differently than Winding Ridge. Although the umpire noticed granule loss to shingles on "the majority of the south and west facing slopes," he attributed that granule loss to "potential manufacture defect, age, wear and deterioration due to the unusual high heat and wind exposure that these elevations are subject to during the life of the material." (Filing No. 86-26 at 2.) The designated evidence indicates that the umpire considered cosmetic damage, he just did not attribute that damage to the hail storm and thus did not include it in his estimate. Because Winding Ridge's assertions are not supported by the designated evidence, its motion on this argument is **denied**.

### 3.   Matching Shingles

Winding Ridge asks the Court to determine that the Policy requires State Farm to cover the replacement of any damaged shingles with shingles that match the undamaged shingles. (Filing

No. 108 at 10-11.) It also asks the Court to determine "if the roofs could not have been replaced with matching shingles, then the Policy allows for full roof replacement so that the roofs will 'match' with a reasonably uniform appearance." *Id.* at 12-13. In support, Winding Ridge does not cite any language from the Policy, but rather directs the Court to the National Association of Insurance Commissioners' Unfair Property/Casualty Claim Settlement Practices Model Regulation § 9A, which says:

> A. When the policy provides for the adjustment and settlement of first-party losses based on a replacement cost, the following shall apply:
>
>          ***
>
> (2) When a loss requires replacement of items and the replaced items do not match in quality, color or size, the *insurer shall replace all such items in the area so as to conform to a reasonably uniform appearance*. This applies to interior and exterior losses. The insured shall not bear any cost over the applicable deductible, if any.

(Filing No. 109-23) (emphasis added). State Farm replies that the policy does not require the replacement of undamaged property, and thus forcing State Farm to cover the replacement cost of entire roofs simply because a few replacement shingles could not be matched to their undamaged counterparts would read a requirement into the policy that is not there. (Filing No. 119 at 16-17.)

The Court views the National Association of Insurance Commissioners' Unfair Property/Casualty Claim Settlement Practices Model Regulation as a document that might provide useful guidance if a contract was ambiguous about the quality of the replacement goods the insurer is required to provide. But the Policy is not ambiguous. It states,

> We will pay the cost to repair or replace, after application of the deductible and without deduction for depreciation, but not more than the least of the following amounts: The cost to replace, on the described premises, the lost or damaged property with other property of comparable material, quality and used for the same purpose.

(Filing No. 86-1 at 58.) The Policy does not require the type of exact matching Winding Ridge describes, it only requires State Farm to replace damaged shingles with shingles of comparable material and quality.

Winding Ridge's theory that the Policy required State Farm to provide shingles that match exactly or, if those were unavailable, to replace entire roofs to ensure the shingles match is not supported by the designated evidence. Thus, Winding Ridge's motion is **denied** as to its shingle-matching argument.

### 4. State Farm's Two-Year Defense

Winding Ridge moves for summary judgment as to State Farm's defense that its claim is untimely because it violated the Policy's two-year requirement to sue. (Filing No. 108 at 13-17.) As the Court stated earlier, the two-year requirement is not a two-year requirement at all. Rather, it is a requirement to sue within the longer of two years or the statutory period allowed by the relevant jurisdiction. Indiana's statutory period for claims of this sort is ten years. Ind. Code § 34-11-2-11. Because Winding Ridge undisputedly filed its suit within the ten-year statute of limitations that Indiana law provides, its suit is timely as a matter of law. Winding Ridge's motion for summary judgment is **granted** as to State Farm's two-year defense.

### 5. The Appraisal Award

Winding Ridge asks the Court to rule that the umpire's appraisal award is not binding against Winding Ridge as a matter of law. (Filing No. 108 at 6.) It offers several arguments in support, including that the appraisal provision of the policy is unenforceable because it is ambiguous and lacks mutuality, that the umpire was not impartial, and that State Farm's appraiser was not impartial. For reasons the Court stated in resolving State Farm's Motion for Summary

Judgment, those arguments are meritless. Winding Ridge's motion is **denied** as to the appraisal agreement's validity.

      **6.**    <u>**Wind Damage**</u>

Finally, Winding Ridge argues State Farm breached its obligations by not adjusting the award to account for wind damage. *Id.* Winding Ridge identifies no provision in the Policy that requires State Farm to investigate wind damage when presented with a claim of hail damage. A breach of vague "obligations" or "duties" is irrelevant to a breach of contract claim, which considers only specific obligations or duties arising under the contract. Because Winding Ridge identifies no such obligations in the Policy, its summary judgment is **denied** as to its assertion that State Farm was required to investigate and account for wind damage.

Winding Ridge's Cross-Motion for Partial Summary Judgment is **granted in part and denied in part**

**F.**    <u>**State Farm's Motion to Preclude or Limit Expert Testimony (Filing No. 128)**</u>

As a final matter, the Court will address State Farm's Motion to Preclude or Limit Expert Testimony of certain witnesses, should this matter proceed to trial. Because the Court grants State Farm's Motion for Summary Judgment and there will be no trial, this claim is **denied as moot.**

## IV.   <u>CONCLUSION</u>

For the reasons stated above, the Court **GRANTS in part and DENIES in part**, Winding Ridge's Cross-Motion for Partial Summary Judgment (Filing No. 107). Winding Ridge's Cross-Motion is **GRANTED** as to the Policy's coverage of cosmetic shingle damage and as to State Farm's two-year defense. In all other respects, the Cross-Motion for Partial Summary Judgment is **DENIED**. The Court **GRANTS** State Farm's Motion for Summary Judgment (Filing No. 83) and determines that **all claims should be DISMISSED**. State Farm's Motion to Preclude or Limit

Expert Testimony (Filing No. 128) is **DENIED as moot**.  The Court will issue final judgment in

a separate order.

      **SO ORDERED.**

Date:  3/29/2019

                                      TANYA WALTON PRATT, JUDGE
                                      United States District Court
                                      Southern District of Indiana

DISTRIBUTION:

David E. Miller
SAEED & LITTLE LLP
david@sllawfirm.com

William David Beyers
BUCHANAN & BRUGGENSCHMIDT PC
bbeyers@bbinlaw.com

Eric C. McNamar
LEWIS WAGNER LLP
emcnamar@lewiswagner.com

John Carl Trimble
LEWIS WAGNER LLP
jtrimble@lewiswagner.com